The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner of foreign business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw a line and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Welcome to the United States Court of Appeals for the Fourth Circuit. Our single en banc proceeding this morning is 21-2017, Maryland Shall Issue v. Moore. Mr. Sweeney, whenever you're ready, sir. Thank you, Mr. Chief Judge. Good morning, and may it please the Court. My name is John Parker Sweeney, appearing on behalf of the plaintiff's appellants. The Court already has a long week behind it, and it's had two en banc arguments in the Second Amendment case, so let me jump right into it. To frame the Court's consideration of whether Maryland has met its burden under Bruin's text and history standard, I'll focus on what this case is really about and what it's not. Since 1966, Maryland's handgun registration process has successfully prevented prohibited persons from obtaining handguns. The 77R process requires a seven-day waiting period and a background check. It requires positive proof of identification and application under penalty of perjury. Maryland has no evidence in the half-century history of the 77R that anyone managed to purchase a handgun with a fake ID, and yet the state barely mentions 77R in its briefing, and no wonder. This appeal is not about whether Maryland can prohibit certain categories of persons deemed dangerous from acquiring and possessing handguns. That prohibition was upheld by this Court in Hamilton v. Pelosi and not challenged here. This is not about whether Maryland's regime for requiring permits to carry firearms outside the home is constitutional. You know, you talked about the question whether Maryland can prohibit somebody who's unlawful or not of age. That statement raises for me a particular question about this case which may be somewhat fundamental. Well, as I read Bruin and Heller, it seems to me what the Court is saying, and I'm asking whether you agree with this, seems to me the Court is saying that the right of the people refers to the right of law-abiding adult, ordinary law-abiding adult citizens. Is that how you understand it? I understand law-abiding responsible citizens are within the people. The scope of who are within the people is not at issue in this case. No, I didn't ask you that. I asked you whether that is where the Court is finding its construction of the people. The Court has yet to focus that precisely on it, Your Honor, and I believe that the Rahimi case might shed some light on that particular issue, but that's not at issue in this case. Well, you'll have to bear with me because it may be issue in this case. Let's assume, and there may be a debate on this, let's assume that the Supreme Court has understood the people in the Second Amendment to mean law-abiding, responsible law-abiding citizens. If that is so, then it seems to me a person seeking to purchase a gun has the burden to show that he's an adult, that he's law-abiding, and that he's therefore entitled to purchase a gun and satisfy those. Now, that makes a lot of difference because now it's not the state imposing it. The burden when it comes to the Second Amendment is pushed on to the plaintiff seeking the gun. So in this case, that might be relevant because all four qualifications for the license could fall under law-abiding adult citizens. I mean, you take the 21-year-old age, you take the residence of Maryland, you take law-abiding, and you take the gun safety, which is you have to be responsible. All of those could be burdens that the purchaser has to carry when he wants to buy a gun, and so it might be relevant if that's where it's located in the analysis. If that's so, then it seems to me Maryland is on very solid ground. It's carrying out the burden, it's insisting on it, but analytically it falls on the purchaser, doesn't it? I completely disagree with you, Your Honor. Okay, fair enough. And let me explain to you why it's not relevant to the court's decision in this case. We're not here challenging background checks. We're not here challenging the ability of the state to determine whether the purchaser of a handgun is a prohibited person. That's right. Because we're not challenging Maryland's 70-7R. But Mr. Ramsey, can you say why not? What is your theory for why the background checks are permissible? Those obviously build some delay to the time that you can acquire a gun, but this one is unconstitutional. So, there's a lot of weight in that word, some, before delay, Your Honor. A delay of weeks is unconstitutional. How long is the delay? Well, what delay is necessary? We have an instant check process in Maryland by which all rifles and shotguns are acquired while the purchaser is at the FFL shop. That is an instant check. It happens. In today's world of databases, there is no reason a background check cannot happen at once. So, if the question is waiting, which is not the same as background check. So, if it's not instant, it's not constitutional? That was Judge Harris's question. How long is the delay? How long is a sufficient delay in your view? No delay, it sounds like. So, we are not here challenging 77R, which has a 7-day delay. Excuse me, Mr. Sweeney. Under your analysis, though, the 77R requirements necessarily fail, don't they? Because there's a 7-day period. There is a 7-day period, but we're not here challenging that. No, but I'm saying your analysis. That's correct, but we are not challenging 77R. 77R is in place, and HQL adds nothing to it. So, it's your position. But that's not the question. The question, Mr. Sweeney, is under your analysis, 77R is also unconstitutional. Is it not? 77R's waiting period might have to be shortened to what is necessary. But he said what is necessary is instantaneous. I'm saying that it can be done and is done with respect to long-gone background checks instantaneously. So, Sweeney, can I ask you a different question about time? Because I was thinking, the only analogy I've been able to think of is the taking clause, where we say the inability to use your property for any length of time does not become a per se taking. We don't think about other constitutional rights that way. So, can I give you this typo about time? So, imagine the government had a law that said no gun sales after 9 p.m. And one can imagine lots of public health reasons why one might want to say no gun sales after 9 p.m. Now, if a person wants to buy a gun, and then the gun store can't open until 9 a.m., so that means a person who wants to buy a gun at 9 a.m. has to wait 11 hours and 59 minutes. Do you think that's unconstitutional? Does that trigger heightened scrutiny under the Second Amendment, no gun sales after 9 p.m.? I don't know. It doesn't seem kind of important to know the answer to that, because the whole theory you've got here is making me wait triggers heightened scrutiny under the Second Amendment. And saying that I can't buy a gun after 9 p.m. makes me wait 11 hours and 59 minutes. So, what we're losing sight of here is this case is about waiting weeks. This case is not about waiting 11 hours. It's not about waiting 7 days. Sir, then it's not a claim that there's an infringement under the Second Amendment. It's a burdening of the right, and the Supreme Court has indicated that you have a right to challenge the burden either if the time is too extensive or the fees are exorbitant. And so, apparently, the argument you're making, if I understand correctly, is the time is too extensive. But it seems to me the court has allowed for the notion that some time delay to assure that the person can lawfully possess a gun, regardless of age, is responsible, that there is some time inherent in determining that. And so, we're getting to a point where you're asking us to draw a line as to what is too long a delay and what isn't under the Constitution, as opposed to the absolute denial of the right to have a gun. The line I'm asking you to draw here is the line that extends weeks before the 7 days required by the 7-day seminar. You're making time arguments, but the question here is this is a shallow issue. The gun has to be issued. You're going to get the gun. You don't have to have the showing about whether you have a special showing for your own defense. That's been thrown out. The burden on the right, the burden on the right of too much time or too exorbitant a fee has been recognized. So, the question is, it sounds to me like your case is coming down to the one issue. Is the time necessary to carry out the Maryland statute too long? No, you're wrong, and let me explain why, with all respect. Well, your whole argument is time added. Time added is not my whole argument, Your Honor. And this is not a shell issue regime. You cannot obtain a handgun when you get an HQL. I can't get it. I have my HQL. I go down to my FFL, and it goes, not good enough. Here's the 77-R. So, let me ask you this, Mr. Smith. I'm over here. Are you, you said you're not challenging 77-R. Correct. So, it's your position that 77-R is constitutional. That is not my position. You're just not challenging it. Correct. Okay. Let's put it this way. Explain to me how it's possible to write an opinion that says this is invalid, that 77-R is. Let me tell you exactly how you can do that. You have a sufficient process for prohibiting dangerous individuals from obtaining handguns in 77-R that's in place and not challenged here. It's not challenged because of the technicality that you don't challenge it. If I may finish here. Let me give you this hypo. Imagine that you challenge 77-R. Imagine that you cannot say we're not challenging 77-R. How does someone write an opinion that says this law is invalid, but upholds 77-R? I know you don't think that's actually true, but how does one write an opinion that says that? Because the HQL is a redundant layer extending weeks before you can even apply under 77-R and is not sufficient to get you a handgun when you're done with that process. That's why I can say that. But then why does Judge Niemeyer write that? The challenge you're really making is an excessive burden challenge that the Supreme Court says is made one particular way, not the way you're trying to make it. Well, first of all, I disagree that this is not the way to make that challenge. I'm making that challenge, and I'm here today to make that challenge. And that challenge is to satisfy... So it's not the absolute length of the delay. Is it as much as it is the reasons for any delay? And an arbitrary length of six days or... It's hard for me to understand what time period is presumptively lawful or presumptively unlawful until I look at the reasons for the time delay. And here the reasons are twofold. One, a background check into some minimal training. Now, aren't these fairly standard kind of reasons? Is this just nothing... And if they're abused, that's something else. But given that this is a facial attack, what is wrong with the need to conduct a background check or the need to have some minimal training? So minimal training existed under 77R prior to the HQL, certainly can be done within that waiting period as the state used to do it. As a matter of fact, it can be done in the FFL's office at the time of initial purchase. That initial training can be done. You're getting very close to saying that any delay resulting from a need to conduct a background check or the need to have some minimal training is just presumptively unconstitutional. I mean, that's what you want us to rule, isn't it? That's not what I'm asking you to rule, although you're trying to get me to say that. No, Your Honor, that's not what I'm asking. What I'm saying is the difference between six days and six weeks is constitutionally meaningful. That's what I'm saying. Well, that comes down to simply a time argument, and I'm happy to have that be the argument. But it seems to me if that's so, then we ought to engage on the discussion as to what is burdensome in violation of the Second Amendment and what is justified. But let me reiterate, I'm making a twofold argument. Because the six-week delay does not result in a handgun. You can't get the handgun with the HQL. You get the handgun with the 77R. That's how you get a handgun in Maryland. That's the process that Maryland relies upon. You don't realize your argument still is a time delay argument. The whole business is background checks and the course, the training course. Those are the two things that are being done. And the question is if that could be done in one 24-hour period, we wouldn't be here under your argument. If that takes six weeks, we are here. So that's the argument you're making. But the argument I'm making is this. Just a minute, sir. If that's your argument, then it's not my argument. You keep making it, and then you say it's not your argument. Because you cut my argument in half. All right. Tell me what the difference is between a process that takes 24 hours. You have to take a course. You have to have a background check. It's all done in 24 hours. And I don't care whether it's under one process or the other process. You collapsed them all and did it within 24 hours. You just agreed that wouldn't be a problem. I don't think that would be a problem. All right. So now we have a process that does the very same thing through two processes that takes, you say, six weeks. And there's a problem, right? I would say so, yes. Okay. Now what's the distinction between the two is 24 hours versus six weeks? Because the 24-hour process is sufficient to do what you need to do, and the six weeks is a waste of everybody's time and money, and it deters people from exercising their rights. And that's why we're here, Your Honor. Well, I understand. So it comes down to the question is the time after the 24 hours is burdensome under the Second Amendment, and that's the argument we have to address, and you have to tell us why and where the lines are. Sure. So let me tell you why. The judge in this case below, Ellen Hallander, addressed this very specifically in her opinion, and Your Honors should be directed to the finding that she made with respect to burden. And she found that it undoubtedly burdens the core right. It's Ellen Hallander. Because it makes considerably more difficult for a person lawfully to acquire and keep a firearm for the purpose of self-defense in the home. The district court's holding is surely right. Mr. Sweeney, we're talking about an entirely different analysis now. Judge Hallander didn't have the benefit of Bruin, didn't have the benefit of the court's discussion of Seattle issue regimes and exorbitant fees and lengthy wait times. None of that was before her. And I think it would be helpful for the court if you would address the issue of lengthy wait times and exorbitant fees. It sounds to me like you're saying anything more than a day is presumptively unconstitutional. Is that correct? First, let me address what you said about Judge Hallander, because respectfully, she was addressing step one. She was addressing whether or not the text, under the text of the Second Amendment, the conduct in question is impacted. That step is still part of Bruin. Please don't shout over me. In addressing infringement, you are also addressing step one when you were talking about a temporal delay, are you not? No. Why not? That's a step two analysis. Why? Because the burden of preventing someone from acquiring a handgun instantly is enough to get to step two. So you're assuming a burden, are you not? No. I'm relying on the district court's holding that there was a burden. It undoubtedly burdens the core right to acquire a handgun. Is a background check a step one or two? Just a pure background check, nothing else, whether somebody has a criminal record. Is that a step one or step two? Step two. Well, why do you discard the step one definition of people that the Supreme Court's adopted, that the people means lawful citizens? I don't. Well, if that's step one, then the purchaser has to demonstrate that he's a lawful citizen, adult lawful citizen. I don't know that as a prerequisite to the exercise of the Second Amendment right to defend yourself, I have to demonstrate that I'm a law-abiding citizen. If I defend myself in my home, I don't have to do that. You do. In Maryland, we have people. You have to be within the definition of people. But do I have to prove that before I get to exercise my right to self-defense? I submit no. I'm in my home. I have a firearm. I defend myself. I don't have to prove that I'm a people first. Now, in order to do that, I have to acquire that handgun. Do I have to prove I'm a people first? You burden that right. Now, I'm not saying you don't have a second step to knowledge. Let me just ask a question about this. It seems to me that you want to now rewrite Heller and Bruin because, as I understand the test, the purchaser has to exercise the right and satisfy the requirements of the plain text. Once the purchaser satisfies he comes within the plain text of the Second Amendment, the burden shifts to the state to show a limitation or a regulation.  In this case, the court clearly put into the first a definition of people, which it understood people to mean. And as I understand it, I may be wrong on this, but as I understand the two opinions, that people refers to adult lawful citizens, responsible citizens. And if I'm wrong on that, if it does refer to that, it seems to me that somebody who wants to exercise the right has to be a person who's entitled to exercise the right, and he has to demonstrate that before he can get the right. And you're saying the right of self-defense, which is also inherent in it, actually it's the right to keep and bear arms. It doesn't say anything about self-defense. But the preexisting right, which was for a lawful purpose. But it seems to me that falls on the purchaser of the gun. And you seem to suggest the state has to demonstrate that. It seems to me the state can enforce that. But it could basically say to the man, give me an affidavit that satisfies that you're a people. You and I may disagree on what exactly the second amendment requires. No, I'm trying to read Bruin, under Bruin and Heller. But I don't think it's necessary for this case because we're not challenging 77R. It's not a question of challenge. It's a question of if I'm right about this, if this is part of step one, then all the requirements that the state imposes during that 30-day period seem to be focused on the definition of whether the person is entitled to have a gun. Well, I disagree with that. I know you disagree with everything. You make an argument and then you say, I disagree with it. The argument is, I thought you suggested that that was a definition the Supreme Court gave of people. But maybe it's not. Your Honor, I already addressed that. Could you answer it again, please? Because I don't remember. I don't read the people as being quite that constrained. What does the Supreme Court say the people are? They say they're law-abiding and responsible. You're saying that all people, in order to be eligible to exercise their human rights— I didn't say all people. To demonstrate that you have a right, you have to demonstrate that. And I'm disagreeing with you on that. Thank you, Mr. Sweeney. Thank you. I see my time is up. Mr. Dietrich? Good morning, Your Honors. May it please the Court. Because the state may set substantive requirements for handgun ownership, which the Supreme Court in Heller said that it may, the state may use a licensing system to enforce those requirements. And this non-controversial principle, which is applicable across the spectrum of constitutional rights, controls this case. We start with Heller, which stated that the Second Amendment encompasses a right held by law-abiding, responsible— Does footnote 9 of the Bruin opinion cloak shall-issue regimes with some sort of presumption of constitutionality, absent a showing of abuse? Yes, is the answer. I think the challenge here, as we've seen— And then the footnote goes on to say, but there could be instances of an excessive fee, an excessive delay, an excessive intrusion, all those kinds of things. But absent some evidence of abuse in the record, the shall-issue as opposed to the may-issue regime enjoys some sort of presumption of constitutionality, does it not? We would agree. I think the challenge for this Court, for the litigants, for everybody waiting for guidance from the Supreme Court, is to figure out how do we get there? How did the Supreme Court get to that conclusion? Where do you think that fits? If we were to read footnote 9, if, as Judge Wilkinson suggests, where do you think it fits within the Bruin two-step, if you would? Is it in step one or step two? I think there's two pathways. I'm asking you which one you— You represent the state of Maryland. I'm just asking what the state of Maryland's view is. Is it a step one or a step two footnote? Does it address step one and the people, as Judge Niemeyer suggested earlier, or is it step two, in which case there's a historical analog that we look to? I don't want to be disappointing, but I don't think it matters. I think that we get there either way. Do you have a position on which one it is, or you just don't want to answer that? I'll answer it. We can go to the first step. The first step says we look at the text. We look at who are the people. The people are those who are law-abiding, responsible citizens, and therefore those who are not part of the people don't necessarily have Second Amendment rights. Have you ever challenged in this case that the plaintiffs are not part of the people? No, the state has not challenged that. But you conceded they were, didn't you? For purposes of this case, yes. As far as we know, these people are not— Is your view that the Second Amendment places a burden on the people to prove that they fall within the polity in order to buy a gun? Is the Second Amendment a burden on people, or is it a limitation on government action in Maryland's view? The Second Amendment allows the state to enforce substantive limitations on that right. But it's a limitation on government action. It doesn't place any affirmative obligation on any given person who's not a part of the government to do anything, right? No, the Second Amendment, as we know, embodies a preexisting right. So it's, in that sense, a positive right that the Constitution or the Bill of Rights has. But it embodies all of the meaning of that text, all of the history of that text and the context, and it allows the states to retain that police power to enforce the substantive limitations that are part, whether they come from the text or they come from the historical tradition. Well, it makes a difference, you know, because the analogs are more difficult for you in this case than the suggestion that lawful is a prerequisite to owning a gun. If an 11-year-old came into the store and the store owner said, I can't sell you a gun. And is that a violation of constitutional right? The 11-year-old said, I need it for self-defense. Well, it's not. And again, it's the challenge. It's either because that 11-year-old is not part of the people or that 11-year-old... But if you, for purposes of this case, have conceded the people analysis, the people question, where are you placing it? I mean, this is, we kind of go on the adversarial system. So where are you saying the regime fits in to the Bruin analysis? It sounds like you have said so far it doesn't fall at the people stage. Where does it fall? I mean, just, you could say it falls a bunch of different places, but where do you say it falls? It can fall at the first step, or it could fall at the second step. We need that key piece of information of why is the right limited to law-abiding, responsible citizens. Is it because of textual... Well, the legendary inquiry to that is how did you come about the concession of the people? Because, I mean, go back to Judge Nieman's original questions to your opponent. The question was, Maryland has to make that determination initially, not you. And you may make it for purposes of this litigation, but in terms of whether it's step one, step one requires Maryland to do this. And I assume by doing this you had the benefit of something, the background check, or you know they're 21 years old, or something that's here. That's a step that you've taken for purposes of the litigation, but in terms of analyzing this statute, how this is applied here, we go back to Judge Nieman's point that when we're looking at step one, Maryland has to, it falls upon the citizen to come and say, I'm a citizen. And to do it, they have to come forward. So apparently they've done that. But how did you come to the concession? Is it any different than the way this is done here? There's been no analysis of these plaintiffs. I think the key part is that it's a facial challenge. And so it doesn't matter what they do. You conceded it. I'm sorry? You conceded it. You conceded that they're legitimate. No. They're positive people. You just stood up and said it. Well, if I did, I apologize for that. What we conceded is that it doesn't matter. We conceded that there were people. Under the procedure, the gun dealer is the agent of the state. He's the one that has to ascertain that they're 21 years of age and don't have a criminal record or whatever it is. So I think there is a burden. That they're part of the people, that they're qualified to buy the gun. There is a burden on the gun seller. He's an agent of the state, the gun dealer. He has to comply with the law. Otherwise, he's probably committing a felony. There's some kind of violation or he's going to lose his license or something. Yeah, but I want to be clear that there's an independent burden on the gun seller. There's what? There's an independent burden. The gun seller has... But he's acting for the state of America. But with regard to the hanging on qualification license law, the only burden on the seller is to, hey, do you have a hanging on qualification license? Oh, you do? Okay. Then we move on to the next step. Well, counsel, I thought we asked you in the original panel whether there was any question that the plaintiffs were law-abiding responsible citizens. And I thought your answer was, or whoever was arguing it, was no, there's not a contest. We don't know any of them. They have not gone through the background check. Is it a matter of these individuals plaintiffs are law-abiding responsible? Isn't the point of this statute to make sure that no one who buys a handgun isn't... Like, who cares if they've identified some specific plaintiffs who are law-abiding responsible? This law doesn't just apply to these plaintiffs. It applies to everybody who tries to buy a gun, right? I think that's correct. I think the fact that it's a facial challenge is what's crucial here, not with regard to the particular plaintiff. You mean we've taken what they say in the complaint to be true? Yes. Thank you for that. They aren't exceeding anything that's been done. No litigation or discovery or anything. That's correct. There's nothing, I think, unique, extraordinary, special about these... Accepting their complaint. ...that they have advanced to keep individuals who want to, or I suppose want to get a handgun, but are unwilling to go through the process. Let me ask you this. You talk about the process, and Mr. Sweeney has raised this point. It seems to me it has some legitimate bearing here. The state requires the purchaser to get a license, and that could take up to 30 days. It may take less in a matter of practice, but it could take up to 30 days. And then when he's got the license, the state requires him to get a permit, and Mr. Sweeney says the requirements for the permit are overlapping with the requirements for a license and increase the time period unnecessarily for, say, another two weeks. So now we have six weeks built in with this fairly redundant type of bureaucracy. That's his point, I think. And my question is, what is the justification for the state to have the requirement for a license and a permit? Let me just, if I can, unpack some of the things that you said. So you talk about a license and then a permit. The handgun qualification license is the only permit that one gets. They apply for that. They have to go through the training. They don't get a gun after that, do they? They do not. Okay. I'm trying to get to my point. My point is they have to go through another process. Correct. All right. And Mr. Sweeney argues that second process is redundant in many respects to the first process. And so now that is an aspect of the burdensomeness of the six weeks. That's, I think, I'm understanding what he's saying on that. Right. And I'll get to your point. I just want to push back on the six weeks because the 30 days is a statutory ceiling for the handgun qualification. I understand. So it's not, and there's evidence in the record that these licenses were being turned down. Let's not argue the facts. We have a statute that allows the state up to 30 days to carry, to issue the license. It has to issue the license within 30 days. That's correct. And you have to have the training. But my, you have to get to my point. My point is there is a secondary process behind the licensing process, which is in aspects redundant to the licensing process. And that, because it's redundant and adds another two weeks, he argues is burdensome. And I think where they complement each other is that when you get the handgun qualification license initially and then you have a permit whereupon you can go to a gun store thereafter and purchase a handgun. But isn't what we're discussing here more appropriate to an as-applied challenge at a later date? I mean, what we have before us is essentially a facial challenge to the law. And that seems to me a very bold move to take at the outset to strike it down. But later on, some of the questions that we're asking go to how the law is applied. But I see those as questions to be answered further down the road. What's before us now is a facial challenge to the statute. That's different from questions of fees. It's different from questions of time. It's different from questions of permits versus licenses. Those are all legitimate questions. But I think they're not before us in the here and now. They're before us maybe at some future date. And I'm wondering if footnote 9, we talk a lot about step 1 and step 2. But I wonder if footnote 9 doesn't carry us a good way in suggesting the sequencing of proof. That's just not any old footnote. I mean, footnote 9 is a big deal footnote. It's not just any old footnote. It had to be carefully negotiated within the court itself. And the footnote suggests a sequencing here, which is that there's a presumption of constitutionality for shall carry regimes. But that presumption can be overcome with a showing of abuse. And they list two or three different ways. But that seems to me the subject of a future lawsuit and a future as-applied challenge and a chance to develop a record on how the process works, which we don't entirely know how the process works at this very early stage. What we're asked to do is to strike a whole darn thing down at this early stage without proof of its operation. And that seems to me to be a precipitous step to take at the outset of this whole controversy. You see what I'm saying? Yes, I do, Your Honor. I agree with 99% of what you said. What's the 1%? If the record actually does show how this plays out. Before you get to that, I think I agree with 100% of what Judge Wilkinson said. But I do have a question about footnote 9. And he did point out that footnote 9 referred to shall issue carry permits. This is not a carry permit regime, right? This is the requirement to possess a handgun. Does that matter? Is the test more stringent because it goes to the preliminary right of someone to simply possess a handgun? No, it doesn't. And there's a few reasons why. The first off is that the Supreme Court, when it talked about the right to keep and the right to carry, they were not two separate things. They were on the same level. Secondly, even in one's home, if you were to use a handgun to carry it around your house, you're still bearing it. So the right to bear is still being implicated by possession in the home. And the right to bear has to be preceded by the right to keep or acquire. Okay, so what's the 1% you didn't like about what Judge Wilkinson said? No, I loved everything. But the one point of disagreement is about the record. The record does show that no license was pending for more than 15 days, so that it's not six weeks. It's demonstrably not six weeks. And what I completely agree with is that anything related to time is only appropriate in an as-applied context. Counsel, can I? Maybe some of us did care about step one and step two, even though maybe we shouldn't. I'm at least curious about it. Assume there was a Supreme Court decision that said that this type of inquiry necessarily requires a step two analysis. So I know you say we might be in step one for maybe a couple reasons, but assume, from a hypothetical, that's not possible. You're limited to satisfying Brew in step two. Explain how you do that. I think what I'd start with, the premise, is that Brewin already did that analysis in footnote nine. Footnote nine was preceded by the text, history, and tradition standard. Just kind of humor, I think it's a strong argument to say footnote nine means something. But exactly knowing what it means, to me, is harder to figure out. So I'm saying footnote nine may give us a hint, but you've still got to do the test. I don't think anyone would say, I don't need to meet Brew in footnote nine. It's a holding that we're done with. And if that's your position, fine. But I'm trying to get you to give me your best argument as to how this regime satisfies a step two historical analog analysis. I'm not trying to evade the question. It's a matter of we know the destination, we're just worried about how to get there. And I understand that that's your job to write the opinion in that fashion. And I'm giving you two pathways. And we don't know, because the Supreme Court didn't tell us in footnote nine how they got there. Do you have a historical analog that would support licensing? Not licensing itself, but the fact that when you have substantive limitations on the right, Well, if you have no historical analog and you're in step two, as Judge Quattlebaum would have you suppose for the hypothetical, if you're in step two and you have no analog, then your position fails, doesn't it? No, because the analog, the historical tradition, is the denial of the right, to precluding or prohibiting the possession of firearms by those who are not law-abiding responsible citizens, dangerous individuals. And so if the state can do that. Do you think the how analysis for the analog just doesn't matter? Because the how, the prohibition and after the fact punishment, the analogs that you pointed to, none of them prohibit everyone from having a firearm on the front end. They're not licensing regimes. And Bruin tells us when we look at analogs, if we're in step two, that we've got to look not just at the why, which is what you want to talk about, but also the how. You might think that's wrong, but that's what Bruin tells us, right? And the how is fundamentally different here, right? But I think, look at Bruin footnote nine. The destination is how they got there and they did that same analysis. But what I'm asking is own Judge Quattlebaum's question. If for a minute you were required to provide the actual analysis, not what some want to believe is a presumption of constitutionality that's like dropped in from heaven, right? But instead you actually apply Bruin's step two test, right? You don't have an analog. I understand the step one argument and that might work. But what I'm struggling with is if we're in step two, if Rahimi tells us that these questions about people are only a step two question, do you have any analog other than after the fact punishments? Do you have anything that's ex ante, that requires licensing or limitations? Or is everything after the fact? As you said at the original argument, we couldn't find any laws that require advanced permission. But there's a robust historical tradition relating to prohibiting dangerous people from possessing firearms. So just last question and then I know lots of people have other things. But how does that satisfy Bruin's demand, not just that the why of the analog is the same, but the how, the mechanism, the how has to be the same too. And those are two fundamentally different hows. Everybody agrees that if you are not a law-abiding citizen and you go buy a gun, you can be prosecuted, right? You can be prosecuted as a felon in possession. There's no doubt on the back end that you could be prosecuted for not being a law-abiding citizen and unlawfully buying a gun. There's a robust tradition for that, right? But what there's no tradition of is ex ante precluding people, placing the burden on the people to establish their pre-existing right to own firearms. That's what we're missing. If you can take the gun, if you can disarm someone because of their status, it just goes that you can prevent that person. No, because it's fundamentally different. Because what you're saying is you can prohibit me from buying a gun too, right? Merely because I'm a person of unknown moral character. It might be true. Assuming that you are law-abiding and responsible, Maryland cannot prohibit you from getting a gun. You can, you can for six weeks. You can keep me away for six weeks. Same thing with the Fourth Amendment. I think under your view the Fourth Amendment would tell us you can just detain everybody. Now, somebody in this room has a plot to do something bad. And so for at least 30 days we can detain everybody in the room. Fourth Amendment says because there's somebody in here, we know with certainty that somebody in here is submitting a plot. Or you might say, we might just guess that somebody in here has a plot. And so we're just going to lock everybody in here up. The Fourth Amendment says that's fine because we're only locking them up for 30 days. And we're going to do that to prevent a plot. Plots are bad. When you have it. But it goes back to the point that you, assuming you're law-abiding and responsible, can get a gun. You say that you can't for six weeks or however many, the time requirement. And that goes to the infringement. So we go back to the text. We go back to infringement. You go back to Step 1. I totally understand the Step 1 argument. But we're trying to talk about the Step 2 argument. Assume Rahimi tells us it's Step 2. Then we have the historical tradition. So are you agreeing or disagreeing with Judge Richardson's premise that the mechanism has to be identical? Or is the question a comparable burden? And what's your position on how comparable the burden has to be to the historical analog? So I do disagree that the mechanism has to be the same. And the mechanism, I think, goes to, if you want to call it a first-step textual analysis, it goes to whether it's been infringed. Especially in a situation like this where someone who is law-abiding and responsible and otherwise is substantively eligible will get that firearm. We're not dealing with something like an assault weapon scene yesterday where no matter what you do, you are prohibited from possessing and acquiring that gun. So the burden relates to, is that individual ineligible for possessing a firearm? And the state should be allowed to determine whether that person is eligible under that substantive limitation that adheres to that. But don't we have to compare both the justification and the burden to the historical analog if we're at Step 2? We have to measure it somehow, how comparable it is to the historical analog. Even though the court said it doesn't have to be a twin, it doesn't have to be identical, but there's some measure that we have to hold it up against the standard. Sure, the burden relates to the fact that these folks are ineligible or could be ineligible for possessing a firearm, and the state has to have some way of figuring that out and shouldn't be precluded from not being able to prevent an 11-year-old from getting a gun. Is it not that they could be ineligible? I mean, somebody in this room could have a gun, right? It's hard because they can't do metal detectors, but let's put us in an auditorium. Somebody could have a gun, but nobody thinks we can go search everybody, everybody, merely because somebody could have a gun. What you're saying is the state of Maryland can deny everybody the right to get a gun for 30 days because somebody might be doing it unlawfully. We wouldn't allow that in any other constitutional context. No other constitutional amendment would we allow the roundup of lots of people and the denial of all permits for protest because somebody was going to use obscenity. But, I mean, we all did walk through. I think most of us on this side walked through the magnetometer this morning, even though there was no indication that— My friend Judge Richardson makes a good point, as he always does, but I don't see the limiting principle to what my friend has said because every regulatory requirement is going to probably by necessity apply to all those who it regulates. And that is the definition of a regulatory requirement. And every regulatory requirement is going to shift the burden to someone to prove that they conform with the regulation. And so what I'm concerned about here is that the arguments that are raised against this particular regulatory requirement could be raised against any regulatory requirement of firearms at all on the grounds that it impermissibly shifts the burden to the people and that it is over-inclusive. And so between this over-inclusiveness argument and the burden-shifting argument, you have knocked a whole host of regulatory requirements out. There's no limiting principle to this. I agree, and I would point you to voter registration. We have voter registration to ensure that folks are of proper age, perhaps are not felons in certain jurisdictions, live in the jurisdiction that they're voting in. Even though you may satisfy all of those requirements on the front end. And I think that ultimately I think, Judge Wilkinson, what you're getting at is what this case is about. This is an infringement case, an infringement as to and implicates Bruins, footnote 9 about excessive wait times, exorbitant fees, which of course are not present here. Let's add the third one. How about two processes? There are two processes. You have to get a license and you have to get a permit. Both take time. And the question is, is it violate the Second Amendment to layer the processes to try to satisfy whether a person qualifies to own a gun? I don't think so. I think where they complement, to get back to your question from a while ago, they complement each other because you get the license on the front end and then you may not buy a gun right away. You may buy a gun three years from then. I understand how it works. You keep answering me with how it works. I know how it works. I've read the statute and I've read the permit requirement. The question is, why do you have two requirements up front before somebody can own a gun or purchase a gun? And the question is, is that part of a step one or is that step two? It sounds to me if it's step two, it's pretty unusual. I'm not sure that you have any analog that would require somebody to go through two separate processes to buy a gun. He cannot go in that store and buy a gun if he doesn't have a license under the Maryland scheme. So he has to get a license. And then once he gets his license, then he still has to apply for a permit for that gun. And the question is, is that available anywhere in the United States now? You know, the footnote 9 talks about 43 states for those permitting states, right? Correct. And some of those states have lengthy wait times or lengthier wait times. I'm not talking about the length. You've got to get to my question and it would help because if you can allay my concerns, it would be wonderful. But my concern is a double process, a bureaucratic process that takes time. You have one that gets a license and the other gets a permit. And the license takes time and the state has up to 30 days under the statute to do that. And then you have the permit after that. And so you're going through this bureaucratic lesson to own a handgun. If I can answer your question, the second one is not a permit. It's you go in, you show your HQL, you pick out your handgun, and then you have to go through. You have to get a permit. You have to get a permit for that gun. I don't think that that's accurate. I think in this there's one. What do you get? You have to go through another process, right? Yes. All right. That whole process, what is that designed to do? And what you get is a handgun. No, I said what is that designed to do? It's designed to allow the background check, a background check to be facilitated. All right. And did you do a background check also on the first step, the license? Yes. All right. So you have a background check on the license and a background check on the permit. What's the justification under the Second Amendment for that type of process? The justification is the same, which is to prevent those who are not. How about if we added three or four more of those processes? Would that be a violation of the Second Amendment? Let's add four more. Well, I don't know. I would think that would be a challenge. The concern here is that they are not challenging. So if we had six processes you had to go through, you think that might be a challenge? I think at some point. That's what Bruin says, is that these challenges are subject to infringement, the level of infringement. Can I ask a factual question, Mr. Dietrich? And maybe this addresses Jesnee Meyer's concern. Is this two-step process, the license and the permit process, does that apply even if someone gets the license and that same day goes down to the shop and buys the gun, they have to go through that permit process? Yes. Okay. I mean, I can see the rationale of someone. I think you were saying the hypothetical where someone gets a license and then maybe a year later applies for the permit because the background might have changed in that period of time. That would make some sense. But it seems to make a little less sense if you've got sort of an overlap of an immediate license followed by a permit. I don't see why you would need two background checks for that. Let me ask this question, a simple question. After the licensing process is completed, after that is completed, what is it that you need further to determine whether or not that person is a law-abiding citizen? After that process is over, what is missing from that environment, whether they're a law-abiding person? After the license, what's missing? I believe the license allows the state to be satisfied that the person has passed the background check and is, in their view, a law-abiding responsible citizen. But what's missing? After that licensing process is finished, what's missing in determining whether they're a law-abiding citizen? I mean, you should be able to tell me that, well, we don't have this because that's necessary to make this determination. I'm just asking you, what is bereft in that process once completed that you need to go to the next, which is called permitting? What is that? It's my understanding also that the 77R process serves as a waiting period. No, but see, I'm just asking you what information, because this is about information. It's so simple. It may go all around the bush. I like to do things straight ahead. It's information you need, right? Correct? You need information, right? I mean, this is simple. It's not a trick question. You need information, further information, correct? And also here to do something, too, in terms of training. But you need further information to determine what? Their law-abiding citizen status, correct? I may have confused myself. Are you talking about the HQL? We're talking about a license that's required, then you have a permitting process, right? Permit process, correct? I would disagree. I don't think the second step is a permit or a license. There's one license, one permit, and then there is a seven-day period. He's asking, why can't you get a gun after you get a license with nothing more? Because of the presence of the 77R requirement, which is not being challenged in this case. That's my question. My question is a little more substantive than that. The question is, what information do you need? Because the whole idea of the Second Amendment is a right, a constitutional right, and it's presumptive that you can get the gun, particularly a handgun, if you are willing to do that. So after you have a license, you just say that a background check is done at that process, right? That's right. Do you do fingerprints at both? No, fingerprints are only on the first. Right, so you've got the background check and you've got the fingerprints, and when you actually go into the store. That's correct. That's what I asked you. What else do you need to make them be satisfied they're a law-abiding citizen? What else do you need? We need to know that they're purchasing a handgun at that time, and then a background check is run on them again. On a second background check, at that point. Last second. 24 hours. I think the rationale is that you get the license, and then you get the gun, and there might be time that elapses between those two processes. Let's do it at the same time. That's what you do. You bring it up. You bring the criminal check. You have to know at the moment they get the gun that they don't have a criminal record. They show the card, they pick out the handgun, and then that starts the seven-day process during which a background check is done. Does Maryland have an expedited process for background checks and fingerprinting? I'm wondering because we do backgrounds and fingerprints here, bringing employees like her. I've never seen it done in 30 days. I mean, this is pretty fast. It sounds like to me, and I don't know what kind of background check are you talking about. Are you talking about a federal one or just a state background check? Because it seems like to me you need both, and I don't know how in the world you'd get something from the federal government to give a background check within that short a period of time. We need to know at this point because we hire people here all the time, and it's pretty important for us to know who we're hiring and whether or not they have those things. It's pretty simple on it. But I'm curious. This is a pretty fast process you're doing here. Do you have some expedited process for doing this? I believe it involves state records, federal records, health records, and can be done within the records. What about the fingerprints? Isn't it up to the citizen to get their fingerprints taken and they have to pay for it? It's not done by the state. That's correct. An applicant has to get their fingerprints taken, and they're responsible for the charge. Mr. Dietrich, if you can help me with this on the sequencing, a person could have an HQL license for a period of time. Isn't that correct? That's right, up to 10 years. It's not time limited. So they could have an HQL for a period of years and then decide they want their gun. Or get a second gun. And then the 77R kicks in and does the update. Isn't that correct? That's correct. I want to follow up on Jed's question on fingerprints. You're saying that getting other fingerprints is something the applicant does? That's correct. And how does the state have control of the time when that's done? I mean, if a person comes in to apply, they wait a month. I mean, is there a time period they can do it, or do they do it when they come in to apply? Let me tell you about a hypothetical process. Let's say there's a hang-on qualification. There's actually a place where, as I've seen, some of these places that offer the HQL training actually offer fingerprints. It's a state-approved vendor, Live Scan Fingerprint. So you can go to the same place, get your training, get your fingerprints. It's transmitted to the state police. At that point, once you've done your training, once you've gotten your fingerprints, you can apply. That starts the 30-day period. Again, it's a ceiling. It's not a 30-day waiting period. It's just a ceiling on statutory capital, the amount of time that can go by. The record shows all of them were completed within 15 days. I have one last question, but it deals with the step one on the textual aspect. Judge Niemeyer alluded to the people, and we focused on that. There's that phrase, keeping bare arms shall not be infringed, and the infringement of it. It seems to be two different things when you're trying to propunctually determine on the part of the people. But are there rights being infringed seems to have been a focus here. We've been bouncing back and forth between the two of them, both in my point, but in my opinion, textualist-type considerations, to determine whether or not that's being done. And which one is the emphasis here, if not both? Both, Your Honor, because to determine whether a right is being infringed, you need to know the scope of the right. And you need to either know the scope of the textual aspect of the right, or the scope of the historical aspect of the right. But what we do know from Bruins Footnote 9 is that regardless of whether it's text or history, it arrives at the same destination, which is that you can require individuals to show that they are law-abiding, responsible citizens to have Second Amendment rights, or to be able to possess, carry, etc. Are you checking only the state criminal records? Are you checking Maryland's criminal records? What is the problem in Virginia? Do you check Virginia's records? What do you know? Are you checking the FBI's records? Your Honor, it's federal and state records. I can't speak to the extent to which other states' records are incorporated. But you're getting a federal record, too? That's my understanding, yes. You just mentioned the state record earlier. Yes. Mr. Dietrich, one question and follow-up to Judge Winn. What do you think the significance of, in Footnote 9, the Supreme Court citing the First Amendment case? I think it's Shuttleworth or Cantrell. But they actually cite those cases in Footnote 9. Right. And I think what they're saying is it goes to the infringement aspect of it, the substantive limitations or the burden that one can put on the right so that it's not destroyed. And I think to go to the discretion, so that's another aspect that this is a shout issue licensing scheme. There's no discretion. But there's also the idea that, you know... I think those cases say that it has to be narrow, it has to be objective. Objectively clearly defined criteria, which is what... What if the statute said that the state had to issue the license within one year? You have to go through this process, and the state has to issue the license within one year. Would you defend that as constitutional? Anything that relates to time, I believe, has to be an applied challenge. Why? The statute on its face says it's going to cost you $7,000, and the state has up to one year on its face. They don't have to do that, but that authorizes the state to do it. It infringes on the shout issue. In other words, it now gets into the ramble discretionary. But I'm asking you, we have a hypothetical statute, charges $7,000 for the fee and says the state has up to one year to issue the license. I think we may have a problem with the cost. You just may have a problem? The cost is ascertainable. Then set aside the cost. How about the one year? Because it says up to one year. Right. I think it has to be an as-applied challenge. If it said up to $7,000, it would have to be an as-applied challenge. Why doesn't that implicate the issue of shout issue? In other words, may issue is not constitutional. We know that. And shall issue is constitutional. Now, if you have up to a year and the man doesn't have his gun... I think that the may issue aspect of may issue versus shall issue was relating to the specific discretionary requirement of the proper cause. What's your position on the one year? I have difficulty in answering the question. I think if it says up to one year... You say it's okay up to one year? I think the statute can... On its face, I'm saying. On its face is fine. Up to one year. Just like up to $7,000 would be facially appropriate. If it was $7,000, it's a different story. Here we have a statute that says up to $50. And under the First Amendment jurisprudence of the Cox v. New Hampshire, you say you can have a fee in terms of exercising a constitutional right as long as it relates to the cost of administration. And there's evidence in the record that the cost of administering and issuing these HQLs was more than $50. And so, therefore, the $50 cost was constitutional. In the First Amendment cases that you're talking about, are those cases finding that it's not expressive conduct or are those cases based on means in balance? Those cases are not finding that it's not speech, it's not expressive conduct under the text of the First Amendment, right? They're addressing this step two, means in balance. That's what the court is doing in each of those. That's the means in balance. That's why the court permits, you know, protest licenses, for example, right? It's a means in balance. I would agree with that. Not that it's not expressive conduct. Correct, correct. In other words, step two, not step one in the First Amendment inquiry is where we analyze the permissibility of a license that requires seven days or ten days or thirty days before you engage in a protest. If you're importing sort of step one, step two into the First Amendment... I'm just asking about, you talk about the First Amendment. I was responding, you brought up the First Amendment, I was responding to the First Amendment. I just want to make sure I understand how you understand the cases that you're relying on. You say these are like the permits for protests, right? So that's like a good analog from your perspective. So I'm just saying that those cases do it as means in balance. When they analyze whether the time delay for a permit to engage in a protest, they don't say the protest is not expressive conduct. They say under some level of scrutiny,  it satisfies it or doesn't. But that's means in balance, right? Right, and they've imported... If that's interest balancing, the Supreme Court... Wait, why do you say if that's interest balancing? I thought you just agreed that that was means in balancing. That's interest balancing, right? Right, but the point I'm making is the means in balancing that occurs there has been imported into the Second Amendment via Bruins, Foote, and O'Neill by referencing those and in doing so says that for those particular aspects, the infringement aspect... Footnote 9 says that we engage in means in balancing, like intermediate scrutiny. When it comes to certain things like excessive wait times. Because I think the question that you ask my opposing counsel is where do we draw the line? So make sure I understand what you're saying. Your interpretation of Footnote 9 and the citation to the First Amendment cases is that the Bruin decision tells us we do means in analysis for wait times? I think the import is that it's a different analysis. It sort of takes it outside of that historical tradition. Why doesn't it just say that it doesn't infringe the right to delay your ability to get a gun for a brief amount of time the same way that it doesn't abridge the freedom of speech to say that you have to get a permit? Why is that the easiest, obvious step one? That's correct, and I agree with that. And that's what, at least I think we've been trying to say, is that this is about infringement. When we get to these wait times and we get to these administrative burdens, it's an infringement question and not necessarily a scope of the right historical analysis type question. Can a corporation be part of the people under the Second Amendment? I haven't thought of that. Well, it's a plaintiff's case. About the individuals here, have they already gotten their guns? Individuals here? I don't know. They certainly have had an opportunity. The wait time for them has expired, at least for that point in time. I don't know about the individual plaintiffs in this case. If they have, then the case might be moved, but without prejudice, if there's been a wait time to go through it, it seems like it might have already been, but I'm assuming this is a facial challenge. This is a different perspective. I was just curious in terms of the corporation, because it's supposed to be here. I mean, what happens as members? I haven't... All right, thank you, Mr. Dietrich. You're up. It's way over time. Okay, thank you. Mr. Sweeney. Thank you. Bruin and Heller were both facial challenges brought by law-abiding, responsible citizens. And footnote nine in Bruin talks about a constitutional challenge to a shell issue regime if there are abusive waiting times. And what long waiting time could be more abusive than one that is not even at the end of a shell issue regime? So we have here a two-layered scheme, and we know there are no historical analogs because we're not talking about historical analogs. They point to the militia training, and what do we know about the militia laws? The reason you're not talking about historical analogs is because you're talking about step one? Step one is not in this case. My question is, where would you talk about historical analogs? Would it be step one? Step two. Step two. So you're saying we're not talking about them, and you're saying because we're not talking about step two. We're talking about step two. We're not talking about historical analogs because there are none. Glenn, can I ask you, why isn't this a step one case? So I've got two examples. So the First Amendment says you can't abridge the freedom of speech, but we know that you're allowed to require permits, and that must be because requiring permits does not categorically abridge the freedom of speech. And the Fifth Amendment says you can't take property without just compensation, but the Supreme Court has repeatedly said that limiting your ability to use your property for a period of time is not a taking. That's the Tato case that says that. So why isn't the right to bear arms the same, that it doesn't infringe the right to require a brief waiting period before you can purchase a gun? Why is that the easiest way to do this at this point? First of all, it's not a brief waiting period. Sure, but that's an argument that's too long. Just in the same way that at some point, a delay can take, the Supreme Court says this in Tato, at some point it gets so long, it becomes a taking. Sure, but that means not every delay is a taking, just like not every delay in your ability to get a gun is an infringement of your right to bear arms. Now, at some point, Peru in footnote nine says, at some point it can get so long that it becomes an infringement, but not every delay is an infringement. Why isn't that a completely consistent way to read Peru in footnote nine? Assuming you are correct, whatever interest the government has in requiring the citizen to prove they're part of the people is satisfied by the 77-hour process in Maryland and has been successfully since 1966. So, counsel, I thought your response to Judge Hyden's was not going to accept the premise, right? Because the point that I thought you would make is that Bruin tells us that the question is a historical inquiry. And we know from the First Amendment context the Supreme Court has said it's not a historical inquiry. We instead look at needs and values. And we know in the Fifth Amendment context the Supreme Court has told us that it is an ahistorical inquiry. That's just not what we're doing in those cases. Maybe it's what we should be doing in those cases, but it is not what the Supreme Court is doing. They're doing means imbalancing in the First Amendment context, and they specifically said that's forbidden in the Second Amendment context. They're doing an ahistorical analysis in Tahoe, and despite Cedar Point, we're not back to a historical analysis of the Fifth Amendment. So, I thought your premise would just be the Supreme Court's told us that the Second Amendment is governed by history and tradition, not means imbalancing or the ahistorical taking place. Correct. And when you look at the process and the burdens intended to it, you go into that interest balancing that was forbidden in both Heller and in Bruin. And that's what we're doing here in terms of talking about Kansas State. Cancel. I'm over here. Excuse me. I am confused as to what significance you think we should put on the fact that these are two separate processes. It was just one thing. If Maryland said, you know what, it's going to be a maximum 30 days, you have to have, because they want the background check right before you buy the gun. So, is your objection to the fact that these are two processes, or is it just an objection to having to do two different background checks? Do you know what I'm saying? If this was all under one umbrella program. Well, two different background checks that require some amount of time. So, yes. The HQL is an unnecessary, redundant process. 77 hours sufficient to satisfy whatever government interests have been mentioned by the different judges who have questioned it. But they want the training too, right? They want the training? Well, let's look at training for a second. There is nothing constitutionally justifying of a training requirement to acquire a handgun in the home. If you look at the militia training laws, that was training to participate in the militia. And that training was not required of citizens who weren't participating in the militia. But what kind of a citizen has to be a responsible law-abiding citizen? Why doesn't training go to responsibility? So, responsibility refers to age. It refers to mental acuity. It does not refer to training. And we completely disagree that there is any constitutional... I'm sorry, who said that? What's your authority for it? Responsibility does not refer to training. You say it like... Absolutely, there's no authority that it does. So, you're just... You're here then, essentially, Mr. Sweeney, saying, take your word for it, a responsible citizen does not include the ability to know how to use the firearm. It simply refers to age and mental state because I say so. There's no Supreme Court case... Yeah, there's no Supreme Court case that says it does. There's no Supreme Court case that says to exercise your right under the Second Amendment, you have to establish or remember the people. And to do that, you have to get training. That certainly wasn't the case at the time of the founding. At the time of the founding, you could acquire a handgun. You could acquire a musket, a weapon of war. Doesn't the case today come down to... What is the nature of the delay being imposed? And at what point does the delay become unconstitutional? And I don't think you've really refined that for us. So, at one point, you suggested that maybe if you could do it in a day or an hour, that was fine. But that the 30-day or, as you referred to it, six-week process was too much. Leave us with your definition, if you would, of when does a temporary delay become, per se, unconstitutional so as to render this law facially invalid under the Second Amendment? So, for purposes of rendering this law invalid, anything more than the seven-day wait required by 77R, which we're not challenging. And let me say that, with respect to... So, seven days is okay, then? I'm saying that it's okay for your ruling in this case because we're not challenging that. Okay, so you're saying that you would have no problem with an opinion of this court that said a seven-day delay is fine? This court doesn't need to reach that, and I would have a problem with that. But you don't have to reach that in this case. Right, but we need you to tell us when does delay become, per se, unconstitutional. When it's more than necessary to prove you can take the firearm and you're not a prohibited person. And we know, we know, because instant check is done for long guns, that it can be done instantly in Maryland. Mr. Sweeney, can I ask a question related to Judge Harris's point about footnote 9? Footnote 9 does refer to firearm safety courses, at least suggests that that's part of the analysis in deciding who is a law-abiding, responsible citizen. But my question is broader. So, getting back to the final objective in this case, someone's going to have to write an opinion in this case that accounts for brewing and accounts for that footnote. So, what do you say we should do with footnote 9 in our opinion? So, first of all, footnote 9 makes it very clear that even a shell issue carry regime may be challenged when the wait times are abusive and thereby deny the right to carry in public. So, that's the first thing I say about that. Well, that sounds like a very kind of means-balancing test that apparently is verboten these days, at least by some... The second thing I would say is, while they mention training, they don't mention training as part of the first step of the brewing test to prove that you are a member of the people by demonstrating you are responsible. And frankly, there's nothing in how people has been defined that indicate one's ability, proficiency in handling a firearm. Then where do you think the Supreme Court would locate the training that it referenced in footnote 9? Because you also... Let me finish my question. It'll be short. You also just explained to us that there's no historical analog for that. So, if it's not step 2 and it's not step 1, where is it? There are historical restrictions on carrying firearms in public. But I'm talking about the training requirement. I thought you just told me that the training requirement at the founding was only for the militia. There was no individual kind of a training requirement. I did, but Bruin went through very carefully the very specific restrictions, well-defined restrictions on the right to carry in public, not applying to the right to acquire, to defend in the home. Okay, so for the right to carry in public, Bruin footnote 9 does... I don't want to do this in an argumentative way. It certainly references training requirements. Where do you think those come from if it's not step 1? Because you already told us there's no historical analog. In Bruin, they went through the laws that had restricted carrying deadly weapons to terrorize purpose. They went through surety laws, financial incentives to carry responsibly. Now, maybe that could be an analog from the history once you get to step 2 to justify training. I'm not here to argue that. But they also talked about eliminating one kind of carry as long as they allowed another. They distinguished carrying from acquisition for possession in the home. And that's completely different. Well, how do you address, and if you're talking about the footnote, the footnote actually places it under step 1. It says, it appears that these shall issue regimes which often require applicants to underground background checks or pass firearms safety course are designed to ensure only that those bearing firearms in the jurisdiction are in fact, quote, law-abiding responsible citizens. Isn't that the step 1? Your Honor and I have disagreed on that. No, I'm reading it. I'm asking you about the footnote. I'm not asking to disagree. I said, what does it mean? I disagree that that's addressing step 1 in that footnote. It puts it in quotes, law-abiding responsible citizens. Yes, I see that. And it cites Helen. I see that too. All right, thank you, Mr. Sweeney. Thank you, Your Honor. Thank you all for your patience with me today. And thank you for hearing the citizens of Maryland. Yes, sir. Thank you both for your arguments. We'll come down and agree counsel. And the court then will move on to the rest of the docket for today. Take a brief recess. This Honorable Court will take a brief recess.
judges: Diaz, Wilkinson, Niemeyer, King, Gregory, Agee, Wynn, Thacker, Harris, Richardson, Quattlebaum, Rushing, Heytens, Benjamin, Berner, Keenan